**ROBERT L. FIRTH, ESQ. (BAR NO 231432. )**
**3087 7 Date Palm Drive, Ste B-3**
**Cathedral City, CA 92234**
**TELEPHONE: (760) 770-4066**
**FACSIMILE: (760) 770-4006**
masonlegal(2,gmail.corn

**Attorney for Debtor, Brian W. Davies**


### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### RIVERSIDE DIVISION


In re                                          CASE NO. **6:10-BK-37900-TD**

     **BRIAN W.** DAVIES

---

BRIAN W. DAVIES, an Individual.    )    **ADVERSARY PROCEEDING**
                                 )
         Plaintiff          )    **ADV. NO.:** ——————————
                                 )
-V S.-                             )    **COMPLAINT TO DETERMINE THE**
                                 )    **NATURE, EXTENT AND VALIDITY**
DEUTSCHE BANK NATIONAL TRUST )    **OF LIEN AND TO DISALLOW**
COMPANY, AS TRUSTEE OF THE    )    **SECURED CLAIM, TILA VIOLATION,**
RESIDENTIAL ASSET SECURITIZATION )    **FRAUD, LIBEL, QUIET TILE, AND**
TRUST 2007-A5, MORTGAGE PASS- )    **INJUNCTIVE RELIEF**
THROUGH CERTIFICATES, SERIES 2007-E, )
UNDER THE POOLING AND SERVICING )
AGREEMENT DATED March 1, 2007, )
ITS ASSIGNS AND/OR SUCCESSORS IN )
INTEREST, and all persons claiming by, )
through, or under such person, all persons )
unknown, claiming any legal or equitable right, )
title, estate, lien, or interest in the property )
described in the complaint adverse to Plaintiffs )
title thereto; and DOES 1-150, Inclusive, )
                                )
        Defendants.        )
———————————————)

     COMES NOW debtor and plaintiff BRIAN W. DAVIES herein, ("Plaintiff"), and

respectfully alleges the following:

1.      This adversary proceeding is brought pursuant to 11 U.S.C. § 506 and Federal Rule of Bankruptcy Procedure 7001.

2.      This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334(6). Venue is proper pursuant to 28 U.S.C. § 1409.

3.      This adversary proceeding is a core proceeding as defined at 28 U.S.C. § 157(b) (2) (b) and (b) (2) (K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a claim. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and jurisdiction exists pursuant to 11 U.S.C. § 502 (a) and (b) (1), 11 U.S.C. § 544 (a) (3) and (b) (1), 28 U.S.C. 1334, 28 U.S.C. 2201 for declaratory relief and 28 U.S.C. 1367 for pendent state claims.

4.      The "Chapter 7 Trustee" has filed an abandonment of all claims by the bankruptcy estate, and there have been no timely objections. Debtor has elected to pursue this "Adversary Proceeding".

## PARTIES

5.      Plaintiff is an individual, and debtor of the within captioned bankruptcy case, having filed a voluntary petition for relief under "Chapter 7 of the Bankruptcy Code" on August 31, 2010 ("the Bankruptcy Case") in the Central District of California Case Number: 10-37900.

6.      Plaintiffs is and at all times mentioned herein is the owner and purchaser of real property (hereinafter referred to as "SUBJECT PROPERTY"") and more particularly described as:

**PARCEL:**
**LOT 75 OF TRACT NO, 31601-4, IN THE CITY OF INDIO, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 391, OF MAPS, AT PAGES 35 THROUGH 38, INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.**

7.      Plaintiff is informed and believes and therefore alleged that DEUTSCHE BANK TRUST COMPANY AMERICAS ("DBTCA") and DEUTSCHE BANK NATIONAL TRUST COMPANY ("DBNTC") are wholly-owned subsidiaries of DEUTSCHE BANK TRUST

CORPORATION ("DBCORP"), a bank holding company based in New York City, at 60 Wall Street, New York City, NY 10005.

8.      Plaintiff is informed and believes and therefore alleged that Defendant "Deutsche Bank National Trust Company" ("DBNTC") operates its business in California with principal office located at 1761 East Saint Andrew Place Santa Ana, California 92705-4934.

9.      The "Defendants" herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs title thereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiff. These "Unknown Defendants", and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title; and their claims, and each of them, constitute a cloud on Plaintiffs title to that property.

10.      Plaintiff is ignorant of the true names and capacities of "Defendants" sued herein as "DOES" 1 through 150, and therefore sue these "Defendants" by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiff's title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

11.      "DBNTC". represents itself and holds itself out as the "Creditor", and the "Trustee", for the *"Residential Asset Securitization Trust 2007-A5, Mortgage Pass Through Series 2007-E, under the Pooling and Servicing Agreement dated March 1, 2007"* ("hereinafter, "RAST 2007-A5"") and against Plaintiffs interest in his residence located at 43277 Sentiero Drive Indio, California.

*[by way of DOCKET 29 and DOCKET 49 "Declaration by Brian Barnhill" which included the bogus manufactured "Assignment of the Deed of Trust" signed by Brian Barnhill as signatory*

*that purports to assign the "Deed of Trust" and "Note" on September 20, 2010 to Deutsche Bank National Trust Company as Trustee of "RAST 2007-A51* [EXHIBIT

12.    The "RAST 2007-A5" is a "Special Purpose Trust" issued pursuant to the Registration Statements filed with the "Security and Exchange Commission" ("hereinafter referred to as "SEC""). This document was filed by "Indymac MBS as Depositor" and "Indymac Bank FSB as Seller" submitted and approved by the "SEC" as "SEC File No. 333-132042". "RAST 2007A5" was formed under the Laws of the State of New York. [SEE REQUEST FOR JUDICIAL NOTICE OF SECURITIES AND EXCHANGE CERTIFIED DOCUMENTS OF THE PROSPECTUS AND POOLING AND SERVICING AGREEMENT FILED CONCURRENT WITH THIS ADVERSARY(hereinafter "SEC DOCUMENTS")]

13.    Plaintiff is informed and believes and therefore alleges that "UNIVERSAL AMERICAN MORTGAGE COMPANY OF CALIFORNIA" (hereinafter, "UMACC") represented to Plaintiff that it was "Originator of the Subject Mortgage".

14.    Plaintiff is informed and believes and therefore alleges that, "UMACC" represented to Plaintiff that "UAMCC" by an unknown mechanism transferred unknown interests to "Opteum Financial Services, Inc " ("hereinafter, "OPTEUM""), a subsidiary of "Opteum Inc." .

15.    "OPTEUM" on or about July 3, 2007 closed the majority of its business and changed names to Orchid Island TRS LLC. Orchid Island TRS ceased operations on September 30, 2007. [SEC 10-K FILING BIMINI CAPITAL "SEC FILE NUMBER: 001-32171", "SEC ACCESSION NUMBER: 0001275477-08-000011" ON 03-13-2008.1

16.    Plaintiff is informed and believes and therefore alleged that "OPTEUM" [through an undisclosed transaction] represented to Plaintiff that it had transferred its "Servicing Interests" to "Indymac Bank FSB" (hereinafter, "INDYMAC")

17.    Defendant "DBNTC" [Trustee of RAST 2007-A5], is a National Trust Corporation, doing business in the State of California, alleges to possess a secured interest in the "SUBJECT PROPERTY"

**18.** "DBNTC" or its agents filed false "Assignments of Deed of Trusts" or "Wild Deed Instruments" with the "Riverside California County Recorder", clouding "Plaintiffs Title" and ownership interest for the property known as 43277 Sentiero Drive Indio, California 92203. **[SEE JUDICAIL NOTICE DOCUMENTS "EXHIBITS A-F" AND "DECLARATION OF ATTORNEY ROBERT L. FIRTH" ( hereinafter "EXHIBITS A-F")]**

19.    "DBNTC's" fraudulent claims are facilitated by using these "Wild Deed Instruments". [A "Wild Deed" is a recorded deed that is not in the chain of title because a previous instrument connected to the chain of title was not recorded.]

20.    These "Wild Deeds" will not provide constructive notice to later purchasers of the property; because subsequent "Bona Fide Purchasers" cannot reasonable expect to locate the "Wild Deed" while investigating the chain of title to the property. These instruments are unsecured and as such no security attaches to these "Wild Deed Instruments".

### THE STYLED "PROMISSORY NOTE AND DEED OF TRUST"

21.    On or about November 16, 2006 Plaintiff signed a document styled as a "Promissory Note" ("hereinafter referred to as "NOTE"") on the subject property at 43277 Sentiero Drive Indio, California 92203 for $441,435.00.

22.    Plaintiff is informed and believes and therefore alleges that Universal American Mortgage Company of California ["UAMCC"] falsely represented that they were funding the "NOTE".

23.    Jeffrey Feig, "UAMCC"S" "Loan Advisor" was represented by "Lennar Sales Person", Rita Ellsberg on November 3, 2010, as the best "Banker" and that Plaintiff would get a loan, despite being in the middle of a divorce with other obligations and debts. That Plaintiff was required to use "Lennar's" preferred lender, "UAMCC" to get nearly $20,000 in discounts.

24.    Plaintiff later discovered Jeffrey Feig was a real estate sales person. That a "Loan Advisor" is not a specialty or recognized by the State of California. That "Lennar" the builder, controls Lennar's subsidiary "Universal American Mortgage Company LLC" ("hereinafter referred to as "UAMC"") and "UAMCC" That "UAMC" acted as the trustee of the "Deed of Trust" and is

mentioned in the "Wild Deed Instruments". The "Trustee of a California Deed of Trust" is to represent the interests of the seller and buyer equally.

25.    Plaintiff discovered that "Lennar" and its subsidiary "UAMCC" picked the "Appraiser". Jeffrey Feig on or about November 15, 2010 in a recent meeting with Plaintiff explained that the "Appraiser" James J. Scarcella was chosen for many "UAMCC" appraisals. That he was chosen in part due to the fact "He always worked fast and always came in at the price needed to fund." This information was not disclosed and Plaintiff could not have understood these self dealings.

26.    The "Origination Funds" for the "NOTE" came from another undisclosed source. The indebtedness to this "NOTE" remains uncertain. Plaintiff has not seen the original styled "NOTE" since signing and its whereabouts or existence is undisclosed [Third party subpoenas have been served on "DBNTC", "MERS", and "OPTEUNf].

**27.**    On November 16, 2006 Plaintiff executed another documents styled as a "Security Interest" or "Deed of Trust" (hereinafter referred to as "DOT") with respect to the property as Riverside County Recorded Doc. # 2006-0853245, recorded on **11-17-2006. [EXHIBIT B]**

**28.**    Plaintiff is informed and believes and therefore alleges that **subsequent to signing, unknown "Defendant Agents" defaced the "DOT" to conform to their own deception. This mutilation is substantive in nature and goes to the heart of the deception. The document which purports such interest is invalid ab initio.**

**29.**    Such document cannot be enforced by the initial receptor and its purported successors. Enforcement is "VOID AB INITIO" due to the falsified uttering placed by such agent.
**CALIFORNIA CENTRAL DISTRICT BANKRUPTCY FILING**

**30.**    On September 20, 2010 a "Wild Deed Instrument" was represented to this Court as filed by Mortgage Electronic Registration Systems, Inc., ("hereinafter, "MERS") as nominee for Universal American Mortgage Company of California ["UAMCC"], which purports to assign its "Beneficial Interests" to "DBNTC" as "Trustee, for BAST 2007-A5". [UAMCC'S beneficial interests were previously sold on or about December 21, 2006 to "OPTEUM1 **[EXHIBIT F]**

31.      On or about September 23, 2010, ONEWEST BANK FSB (hereinafter, "ONEWEST"), filed a Motion for Relief from Automatic Stay [DOCKET 29], under 11 U.S.C. 362, asserting a claim against Plaintiff in the sum of $514,067.59, and further asserting that said claim is secured by a lien against real property located at 43277 Sentiero Drive Indio, California 92203. Debtor objected to this motion [DOCKET 42]. Movant further incorporated with its

Motion at least in part the following documents:

   1.      "Real Property Declaration", allegedly signed by "Brian Burnett" on September 20, 2010, in Austin, Texas; Burnett describes himself as an "Assistant Vice President" of Movant;

    "Proof of Service", apparently signed by "Angela Milliman" of Bloomfield Hills, Michigan, mailed "9/23/10";

    "Title Point Tax Search," printed "7/2/2009"; apparently by an entity styled as "Lender Processing Services";

    "Deed of Trust", in 18 pgs, apparently recorded on "11/17/2006";

    "Note," dated November 16, 2006, with "Loan Number " marked over and made illegible,

   6.      "Assignment of Deed of Trust", dated "9/20/10," represented to be in favor of "Deutsche Bank National Trust Company, as Trustee", again represented to be signed by "Brian Burnett",

   7.      "Server Print Sheet", printed "09/16/2010",
   8.      Copy of "Unamended Schedule D" of Debtor, filed 9/12/10;
   9.      "Movant's Motion", represented to be signed by "Christopher J. Hoo" dated 9/23/10, in Sherman Oaks, California

32.      On or about October 12, 2010, as legal maneuvering and usual deceptive practice upon the Court, "ONEWEST" filed a new "Motion for Relief from Automatic Stay". The motion essentially the same except it styled ["ONEWEST" Movant as servicing agent Deutsche Bank] [DOCKET 49]. Debtor objected to this motion [DOCKET 50].

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

33.    Plaintiff timely objected to "ONEWEST" Movant" [Docket 29] and "ONEWEST" Movant as servicing agent for "DEUTSCHE BANK" [Docket 49] and asserted that these entities had "No Standing" to assert "Secured Interest Claim" upon Plaintiff's property.

34.    The motions were heard on the merits before Honorable Thomas B. Donovan on November 18, 2010. The motions were denied because "ONEWEST, Movant" and "ONEWEST, Movant, as servicing agent for DEUTSCHE BANK", have "No Standing" to proceed.

## CALIFORNIA STATE WRONGFUL FORECLOSURE ACTION

35.    A California State Foreclosure action was initiated by "Mortgage Electronic Registration Systems", ("hereinafter, "MERS"), a State of Delaware Corporation doing business in California as a "Foreign Corporation", as the "Beneficiary" on July 10, 2009. The document was recorded, July 14, 2009 as Riverside Recorder Doc. # 2009-0362260. "MERS" the "Beneficiary" initiating the foreclosure, never acquires any pecuniary interest in mortgage loans **[EXHIBIT** C]

36.    "MERS" the foreclosing entity is a "Third Party". The entity lacks "Standing" and the "Capacity" to foreclose. The entity has no first hand knowledge of the "Loan", no authority to testify or file affidavits as to the validity of the "Loan Documents" or the existence of the "Loan" The entity has no legal authority to draft mortgage assignments relating to the "Loan". This foreclosing entity and its agents regularly commit perjury in relation to their testimony.

## THE NOTES ARE SOLD FORWARD, SECURITIZED, INSURED, AND PACKAGED

37.    "UMACC", the purported originating "Lender", on the original styled "NOTE" was not the lender, and the "NOTE" was "Collateral for Undisclosed Transactions". Routinely multiple "Notes" are grouped together, pooled, securitized, and rapidly sold to "Wall Street Investors". These "Notes" are sold forward which passes risk obligations forward with little accountability

38.    "Mortgage Backed Security" **["MBS"]** routinely disregard and dismantle state real estate laws while clouding the records of title. The demand pulled forward requires speedy

processes and lower approval standards to keep the fuel for "Wall Street" securitizations. To move such inventory creates opportunities for "Error, "Deceptive Practices", and outright "Fraud".

39.        "MERS, as Nominee for UMACC", was never intended to be the "Beneficiary of the Mortgage Loan". It was designed to hold "Bare Legal Title", and avoid paying "County Land Recording Fees".

40.        "Indymac Bank FSB", [Indymac Mortgage Services, a division of °newest Bank FSB], "Lenders Process Servicing" ("hereinafter "LPS""), or some "Remote Agent" declares the default, "without privities with the original lender" or its beneficial assignee.

41.    The "True Beneficiary" of the mortgage loan has not declared a default [There has been full payments to the "Trustee" as required by the "Pooling and Servicing Agreement"] and does not have "True Ownership Interest" in the actual "Mortgage Note", just the cash flows from the mortgages [which are paid on time]. The "MBS Investor" does not own the "Notes".
**[EXHIBIT "SEC DOCMENTS"]**

42.        The *"Notice of Default and Election to Sell under the Deed of Trust",* recording was request by LPS Default Title & Closing. "California State Laws" require that all the proper documents be in possession to legally proceed. **[EXHIBIT C]**

 "Notice of Default and Election to Sell under Deed of Trust"

Riverside Document # 2009-032260 requested by LPS Default.

*NDEX WEST, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 11/16/2006, executed by BRIAN W. DAVIES, as Trust or, to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), as Beneficiary Recorded on 11117.2006 as Instrument No. 2006-08532-15 of official records in the Office of the Recorder of RIVERSIDE County, California, as more fully described on said Deed of Trust. Including a Note(s)/ Unconditional Guaranty which had a principal amount of $441,350.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of*

THE INSTALLMENT OF PRINCIPAL AND ..... BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS. That by reason thereof **the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand** for same, and has **deposited** with said agent such deed of trust and **all documents evidencing obligations secured thereby,** and has declared and does

**hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.** *DATED: 7/10/2009 NDEX WEST, LLC as Agent for Beneficiary*

43.    California Civil Code §2924 controls the "Non-Judicial Foreclosure" process, and requires "Statutory Compliance" to file the "Notice of Default". Strict compliance is routinely ignored and fabricated documents are submitted as true and accurate, when they are not accurate. Documents are "Robo-Signed", "Manufactured after the Fact", and "Fraudulently Constructed" for hearings [bankruptcy] as in the case at bar [verifications by declarations]

44.    On October 20, 2010, a "New York Judge" ruled that foreclosures require **a** signature from the "Bank's Attorney" affirming that they have checked all paperwork. **Since then weekly foreclosures have tumbled from 800 to 100,** according to the "New York Law Journal".

45.    "MERS" has no 'Beneficial Interest' in the "NOTE", has never held the "NOTE", and has "No Agency Authority" to convey an interest in the "NOTE". Any attempt by "MERS" to transfer the ownership of the "NOTE" is VOID.

46.    The mortgage loan assigned to "MERS as Nominee" is at most, an "Unsecured Debt". The **only** parties entitled to collect on the "Unsecured Debt" would be the "Holders in Due Course" and "Beneficial owners of the Original Promissory Note".

47.    Certain individuals who are the employees of the "Servicer", [Indymac Mortgage Services a Division of Onewest Bank], "Execute and Notarize" forged documents as to the ownership of the loan. The "Affiants" have committed counts of "fraud", "perjury" and "forgery" associated with this misrepresented "Mortgage Loan".

## "RAST 2007-A5" IS A PRIVATE MORTGAGE BACKED SECURITY FORMED UNDER STRICT COMPLIANCE NEW YORK TRUST LAWS

48.    Defendant "DBNTC", represents itself as a "Trustee" of a "RAST 2007-A5", coming to Court. It is actually a "Mortgage Back Security" ("MBS") and as "Trustee", holds only "Nominal Legal Title" to represent the "Trust".

49.    Such "MBS" is formed under "New York Trust Laws". Such a Trust functioning under such law provides that "any transfer to the "Trust" in contravention to the trust documents is VOID. [N. Y. ESTATES, POWERS & TRUST LAWS § 7-2.4 (McKinney 2002)].

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

50.     Pursuant to the "Trust Agreement" which governs **"RAST 2007-A5", the "Issuing Entity"** was created by the "Depositor" **(Indymac MBS)** and its assets consist of the "Trust". The Issuing Entity has no employees, officers or directors.

51.     The **"Trustee (Deutsche Bank National Trust Company),** the "Depositor" **(Indymac MBS),** the "Master **Servicer" (Indmac Bank FSB),** and the "Custodian **of Records" (Deutsche Bank National Trust Company),** act on behalf of the "Issuing Entity" and may only perform those actions on behalf of the "Issuing Entity" [specified in the "Trust Agreement"]. The "Sale and Assignment Agreement", the "Servicing Agreement", the "Custodial Agreement Guidelines", and "Trust Agreement-Assignment of Mortgage Loans" are among the multiple restrictive agreements among "The Parties".

**52.**     "Trust Documents" are explicit in setting forth a method and date for the "transfer of the mortgage loans to the trust" and in insisting that no party involved in the trust take steps that would endanger the "Tax Status". [SEE: **"DISCUSSION" IN THE REQUEST FOR JUDICIAL NOTICE "SEC DOCUMENTS".]**

53.     "Securitization" divides the "Beneficial Ownership" of "Mortgage Loans" from "Legal Title" to the loans and from the "Management of the Loans". The "RAST 2007-A5" (or more precisely its "Trustee") holds "Legal Title" to the "Loans", and the "RAST 2007-A5" is the *"Nominal Beneficial Owner"* of the "Loans". This "Nominal Structure" is much the same used by "HERS" in the "Deed of Trust", and designed to be "elusive", "confusing", and "opaque".

54.     The "Certificate Holders" or "Investors" in "RAST 2007-A5" are formally Creditors of the Trust", not *"Owners of the Loans"* held by the "Trust". The economic reality, however, is that the "Investors" are the True Beneficial Owners" as they are entitled to the "Cash Flows" from the pools of notes. This design is done to protect the "Investors" from any litigation arising from "fraud" or "misrepsentations".

55.     The "Trust" is just a cash pass-through holding entity, rather than an operating company. Moreover, while the "DBNTC" has "Nominal Title" to the "Loans for the Trust".

However, it is the third party "Servicer" that typically exercises "Legal Title" in the name of the "Trustee" and deceives many courts in this country.

56.    The economic realities of "Securitizations" do not track with its legal formalities; securitization is the apotheosis of legal form over substance, but punctilious respect for formalities is critical for "Securitization" to work.

57.    The "Servicers", like "INDYMAC", are merely administrative entities governed explicitly by the "Pooling and Servicing Agreement" ("hereinafter "PSA"") formed under "New York Trust Laws" [New York Trust Law was chosen since the body of law was the greatest]. The "PSA" outlines the contractual arrangement with "The Parties", of the process to collect the mortgage payments, and escrow funds. **[EXHIBIT "SEC DOCUMENTS" EXHIBIT #2 "PSA"]**

58.    The "RAST 2007-A5" has signed up under oath with the "Security Exchange Commission" ("SEC"), and the "Internal Revenue Service" ("IRS"), as mortgage asset "Pass-Through" entities wherein they can never own the "Mortgage Loan Assets" in "RAST 2007-A5"

**59.**    This allows `RAST 2007-A5" to qualify as a "Real Estate Mortgage Investment Conduit" ("REMIC") rather than an ordinary "Real Estate Investment Trust" ("REIT"). As long as the "RAST 2007-A5" is a qualified "REMIC", no income tax will be charged to the "RAST 2007-A5". This is very favorable to Investors, and helps to fuel the massive volumes of sales for these investment vehicles. **[SEE "REQUEST FOR JUDICIAIL NOTICE "SEC DOCUMENTS" DISCUSSION]**

**60.**    Importantly, "DBNTC as Trustee" and in the case at bar "Custodian of Records", must assigned mortgages and record in the investors name as the "Beneficiaries of the "RAST 2007-A5" in the year the "Trust" was "Closed" [2007]. **[SEE "SEC DOCUMENTS" EXHIBIT #2 (PAGE 44 OF 119) AS "SECTION 2" OF THE POOLING AND SERVICING AGREEMENT "CONVEYANCE OF MORTGAGE LOANS"]**

61.    Every mortgage assignment into the "MBS" [RAST 2007-A5] should be publicly recorded in the County where the property is located [Riverside County California as the case at bar]. It is to include an assignment in the name of the "Trust" ["Residential Asset Securitization

Trust 2007-A5, Mortgage Pass-through Certificates, Series 2007-E, under the pooling and servicing agreement dated March 1, 2007.1.

**62.** Plaintiff's "Deed of Trust Assignment" would have had been publicly recorded in the year 2007. To violate "New York Trust Laws" governing such "PSA" would "VOID", the transaction. **[SEE "REQUEST FOR JUDICIAIL NOTICE "SEC DOCUMENTS" DISCUSSION]**

63.    Under "New York Statutory Law", any action undertaken by a "Trust" that is not within the "Authorized Powers of a Trust" is "VOID".[1] In the context of "Mortgage Securitization Trusts", the "Trust Agreements" ("PSA") expressly limit the "Trustees'" authority to adherence with the provisions of the "I.R.S. R.E.M.I.C. Code", "Mortgage Securitization Trusts" are not authorized to operate in violation of the "I.R.S. R.E.M.I.C. Code". An analogous case is *In re Olney's Estate* where a trustee was liable for operating outside his specifically limited authority.[2]

64.    "RAST 2007-A5" is a Real Estate Mortgage Investment Conduit ("REMIC"). A "REMIC" is a tax favored pass-through trust with strict rules. A "Qualified Mortgage" must be purchased by the "REMIC" within 3 months of the "Cut-Off date" for the "Loan Trust". lRC 860G(a)(3)(A)(i)-(ii) (2006). If it is contributed after this window, it must qualify as a "Qualified Replacement Mortgage." IRC § 860G (a)(4)(A)-(B)(2006).

65.    A "Qualified Replacement Mortgage" must be traded for a defective obligation and may not be conducted more than two years after the startup date. 26 U. S.C. 860G (a)(4)(B)(ii)(2006).

**66.** As "Trustee" for the "Issuing Entity", "DBNTC" lacked the power to acquire or take assignment of any mortgage outside of the 3 month period following the "REMIC Cut-Off Date" of 3-1-2007 [Attorney written verification that the trust tax exemption is not affected for 90-730 days late additions, and no replacement is allowed after the 2 year mark]. **[ SEE "REQUEST FOR JUDICIAIL NOTICE "SEC DOCUMENTS" DISCUSSION WITH REFERENCES]**

---

McKinney's Consolidated Law of New York Annotated, Estates Powers and Trusts Laws § 7-2.4 (2002); *see* Allison & V Valen Co. v. McNee, 9 N.Y.S.2d 708 (N.Y. Sur. 1939).
[2] In re Olney's Estate, 20 N.Y.S.2d 884 (N.Y. Sur. 1940).

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

67.    An attempted assignment of the "NOTE" to the "Trust" after this period is a "Prohibited Transaction" which jeopardizes the favorable tax status accorded a "REMIC". This transaction would be in contradiction to the "PSA" formed under the "New York Trust Laws" and is "VOID"

**68.**    An "Assignment, Dated September 20th, 2010", and as submitted to this Court with a "Declaration by Affiant Brian Barnhill", [3 years 6 months after trust closing] is "Ultra Vires". In this scenario, even if the foreclosing entity produces a copy the "NOTE", or even the alleged original, the "NOTE and DOT" was not conveyed into the "Trust" under the strict New York Trust Law" requirements of the "SEC" filed documents for "BAST 2007-A5" ["REMIC" requirements of the "IRS"]. **[EXHIBIT F] [SEE "SEC' RJN DISCUSSION WITH REFERENCES TO THE "PSA".]**

69.    Consequentially, the end result would be that the required "BAST 2007-A5 Asset', or any part thereof ["NOTE" or "DOT" Assignment], would not have been legally transferred to the "Trust" to allow the "Trust" to ever even be considered a "Holder of this Mortgage Loan".

**70.**    Neither the "Trust" nor the "Trustee" will never have "Standing" or be a "Real Party In Interest" before this Court, as evidenced by this "Court's Order Denying Deutsche Bank's Motion for Relief from the Automatic Stay". **[ORDER NOVEMBER 18, 2010 HONORABLE JUDGE THOMAS B. DONOVAN DENYING MOTION FOR RELIEF FROM STAY]**

71.    The transfer of "Mortgage Loans" into the `BAST 2007-A5' Trust [in which "DBNTC" is the Trustee] after the "Cut Off Date" [in this case 3-1-2007], impairs the "Trust's REMIC Tax Exempt Status", and "BAST 2007-A5" may owe millions of dollars to the "IRS" and the "State of California"[the income maybe taxed at of one hundred percent (100%) for such error'

### THE MOTION FOR RELIEF FROM AUTOMATIC STAY INCLUDED FRAUDULENT DOCUMENTS MANUFACTURED FOR THE COURT

72.    Plaintiffs' "Styled NOTE" and "Styled SECURITY INTEREST" assignments were fraudulently proffered on or about September 23, 2010 for this Court and after the filing "Bankruptcy Filing of Plaintiff' [weeks prior to the August 31, 2010 tiling]

73.     The fraudulent act was done with intent to deceive this "Court" by attempting to transfer through a "MFRS as Nominee of UAMCC" an assignment to "DNBTC as Nominee of RAST 2007-A5" years after it was possible by the "PSA". Any transfer into a "REMIC" Trust after that "REMIC's" "Cut Off" and "Closing Dates" is a violation of the "SEC Offering Documents" and the strict "New York Trust Laws" and are "VOID".

74.     Plaintiff was never informed of the nature of the undisclosed multilevel securitization scheme. Plaintiff was deliberately induced into signing a "Negotiable Instrument" which was never intended as such, but as intended as "Collateral for a "MBS".

75.     The fact that this "Styled Loan Document" was meant to fund a "MBS" was a "Material Disclosure" which was deliberately and intentionly undisclosed in the "NOTE" and the "DOT". Failure to disclose the identity of the true lender at closing was also a "Material Disclosure", the nature of which would make the contract "Voidable" under "California Contract Law"

76.     Such transfer would indicate that an "Undisclosed Yield Premium" ("hereinafter "YSP"") was not disclosed to Plaintiff in closing "Real Estate Settlement Documents" and constitutes violation the "Truth and Lending Laws" ("hereinafter "TILA"").

**77.**     As required by the "SEC Filings", "RAST 2007-A5" has a "Pooling and Servicing Agreement" ("PSA") which was dated March 1, 2007. The purpose the "PSA" is for the administration, distribution of funds to the investors, conveying the "Mortgage Loan Files" for a complete chain of title, and the obligations of the "Trustee" in administering the "MBS". **[EXHIBIT "SEC DOCUMENTS" EXHIBIT #1, "SECTION 2", PAGE 44 ET. SEQ]**

78.     The investors who put up money for the "RAST 2007-A5" and who received the "MBS Certificates" or "Bonds" are not parties to the "PSA". These "Certificate Holders" do not own the pools of "Notes", but are entitled to the cash flows generated.

79.     The "Investor" continues to receive cash flows from any "Note" in default, and they as "Beneficiary" do not notice a "Default".

80.      "Plaintiffs' Mortgage" was never part of "RAST 2007-A5" as ["Onewest Bank FSB" as Movant], and ["Onewest Bank FSB" as servicing agent of Deutsche Bank] represented to this Court. The assignment of mortgage loan into the "Trust" did not occur and could not occur on or about September 20th, 2010, wherein the "MBS" "Cut-Off Date" was sometime in March 1, 2007

**81.**      Pursuant to the "Custodial Agreement" between the "Custodian" and the "Trustee", the "Custodian" is required to hold the related "Mortgage Loan Documents" [Loan Level File] on behalf of the "Trustee" in an individual file, separate from other "Mortgage Loan Files" held by the "Custodian", and is also required to maintain the said documents in a "fireproof facility" intended for the safekeeping of such "Mortgage Loan Files" [SEE **"SEC DOCUMENTS" EXHIBIT #1 (PAGE S-60-61, "THE TRUSTEE"].**

82.      Here, the "NOTE" and the "Security Interests" were severed or bifurcated when the "Deed of Trust" was fraudulently assigned to "MERS as Nominee for UMACC"

**83.**      "UMACC" never loaned any money to the Plaintiff. "MERS" was never a "Beneficiary under the Note". "MERS" purportedly held the Mortgage as "Nominee for UMACC", and was the "Putative Assignee" which conveyed such "Deed of Trust: to "DBNTC" on September 20, 2010 and after the date of filing of this Bankruptcy. **[EXHIBIT F]**

84.      Such "Assignment" was done by an employee of "INDYMAC SERVICER" a subsidiary of "Onewest Bank FSB", not by "UAMCC" who allegedly already assigned their beneficial interest years before ["UAMCC" represented in a letter in January 2010 that on December 21, 2006 "UAMCC" sold to Opteum Financial Services December 2006 the "Note" and "Servicing Rights"].

85.      Since the filing of the case at bar August 31, 2010, the only party who could authorize the "Mortgage Assignment" for a "Bankrupt Mortgage Assignee" would be the "Bankruptcy Trustee". In this case, "MERS' Mortgage" has been assigned on behalf of a "Bankruptcy Entity", and as such a "Criminal Violation of the Bankruptcy Code" has occurred.

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

86.      An "Assignment from MERS" was a legal nullity. "MERS" never had an interest in this fraudulently conveyed "Deed of Trust" and "Note".

87.      The "MERS" assigned mortgage was prepared by an agreement between the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be "Officers of MFRS".

### FIRST CLAIM FOR RELIEF
### [Declaratory Relief to Determine an Interest in Property]
### IF.R.B.P 7001(2) and 7001(9)]

88.      Plaintiff re-alleges and incorporate the allegations contained in paragraphs 1 through 87, inclusive, **as** though set forth at length herein.

89.      Plaintiff alleges that he holds an interest in the Property free and clear of any interest of defendants, in that the lien evidenced by the "Deed of Trust" and its subsequent assignments has no value since it is 'wholly unsecured', and that accordingly, the "Deed of Trust" is "Null **and Void"**.

90.      Plaintiff is informed and believes that Defendants allege that the "Deed of Trust" cannot be determined to be "Null and Void" because it is secured by the Property which is Plaintiff's principal residence and is not wholly unsecured.

91.      Plaintiff is informed and believes and thereon alleges that Defendants dispute the contention alleged herein.

92.      An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature and extent of their interests in the Property.

93.      It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendants' interest in the Property.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 43277 Sentiero Drive Indio, California 92203,

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

2.  That the Court determine that the amount of the lien secured by the "Deed of Trust" described herein is zero;

3.  That the Court determine that the claim owed to "DBNTC" by Plaintiffs is wholly unsecured;

4.  That the Court determine that the "Deed of Trust" is "Null and Void;

5.  For attorney fees and costs of suit incurred herein; and

6.  For such other and further relief as the court deems just and proper.

### SECOND CLAIM FOR RELIEF
### [Declaratory Relief to Determine Status of Deutsche Bank Claim]
### [11 U.S.C. § 506 and F.R.B.P 7001]

94.  Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 87, inclusive, as though set forth at length herein.

95.  Plaintiff alleges that the lien evidenced by the "Deed of Trust" has no value since it is wholly unsecured; that "DBNTC' s" claim is not allowable as a secured claim, and that accordingly, the "Deed of Trust" and its subsequent assignments are null and void.

96.  Plaintiff is informed and believes that "DBNTC" alleges the "Deed of Trust" cannot be determined to be "Null and Void" because it is "Secured by the Property" which is Plaintiff's principal residence and is not wholly unsecured.

97.  Plaintiff is informed and believes and thereon alleges that "DBNTC" disputes the contention alleged herein.

98.  An actual controversy exists between Plaintiff and "DBNTC" with regard to the status of its claim as "secured", "unsecured" or "void".

99.  It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to whether "DBNTC' s" claim against Plaintiff shall be allowable as "secured" or "unsecured".

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 43277 Sentiero Drive Indio, California 92203;

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

2. That the Court determine that the amount of the lien secured by the "Deed of Trust" is zero;

3. That the Court determine that the claim owed to "DBNTC" by Plaintiffs is wholly "unsecured";

4. That the Court determine that the "Deed of Trust" is "Null and Void";

5. For costs of suit incurred herein; and

6. For such other and further relief as the court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**[As to Defendant DBNTC]**
**[15 U.S.C. § 1641(g)]**

100. Plaintiff re-alleges and incorporate the allegations contained in paragraphs 1 through 87, inclusive, as though set forth at length herein.

101. On or about September 20, 2010, "MERS" purportedly assigned the "Deed of Trust" to Defendant "DBNTC" and presented it to this Court by "Affidavit'

102. In May 2009, "The Helping Families Save Their Homes Act of 2009" was enacted into law that calls for notice to the consumer when a "mortgage loan" is transferred or assigned. The provision was effective immediately and violations are subject to "Truth and Lending Act" ("hereinafter "TILA"") liability

103. 15 U.S.C. § 1641 was amended by adding at the end the following:

(g) **NOTICE OF NEW CREDITOR**

(1) IN GENERAL.- In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-
(A)   The identity, address, telephone number of the new creditor,
(B)   The date of transfer,
(C)   How to reach an agent or party having authority to act on behalf of the new creditor;
(D)   The location of the place where transfer of ownership of the debt is recorded; and
(E)   Any other relevant information regarding the new creditor.

104. From the record, it appears that "DNBTC" became the new owner or assignee on September 20, 2010

105. To date, Plaintiff has not received any notice as required by 15 U.S.C. § 1641(g).

WHEREFORE, Plaintiff prays for judgment against Defendant "DBNTC" as follows:

1.    Statutory damage in the amount of $4,000.00;

2.    For attorney fee and costs of suit incurred herein; and

3.    For such other and further relief as the court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
[As **to All Defendants**]
**[Fraud in Conveyance]**

106. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 87, inclusive, as though set forth at length herein

107. "MERS as a Nominee for UMACC" purportedly assigned the "Deed of Trust", together with "Note" to "DBNTC as Trustee of RAST 2007-A5"

108. "MERS" was and is a "Foreign Corporation" having no authority to conduct business in the State of California. "MERS" fraudulently acted as nominee for "UMACC" and as "Beneficiary under the Deed of Trust" without Plaintiffs consent

109. Upon information and belief, Plaintiffs therefore allege that neither "MERS" nor "DBNTC" paid any consideration for the "Promissory Note". Assuming *Arguendo* that if **"DBNTC"** purchased the "Promissory Note" and paid "MERS", such assignment would constitute fraudulent conveyance.

110. All Defendants mentioned herein participated in the "Fraud" by processing falsified "Assignments of the Deed of Trust"

111. "DBNTC" falsely represented to Plaintiff that they received valid assignment of "Deed of Trust" and enforceable endorsement of the "Promissory Note" to procure payments from Plaintiff that they were not entitle to receive.

112. The representations made by said Defendants were in fact false. The true facts were that "MERS" could not act as a nominee for "UMACC" in receiving the "Assignment of Deed of Trust". In fact, "MERS" had no interest in the "Promissory Note" and could not assign or enforce

the "Promissory Note". ["HERS" could not assign "UAMCC's" interest as proffered as "UAMCC" wrote to Plaintiff that they sold all their interests in December 2006].

113.    Plaintiff, at the time these representations were made by Defendants and at the time Plaintiff took the actions alleged herein, was ignorant of the falsity of the Defendants' representations and believed them to be true. In reliance on these representations, Plaintiff was induced to make payments to these Defendants when they were not entitled to such money.

114.    The aforementioned conducts of the Defendants were intentional misrepresentation, deceit, or concealment of material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving the Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiff to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

### FIFTH CLAIM FOR RELIEF
**[As to All Defendants and All Persons Claiming by,
Through, or Under Such Person, All Persons Unknown, Claiming Any Legal
Or Equitable Right, Title, Estate, Lien, or Interest in the Property
Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150]
[LIBEL]**

115.    Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 87, inclusive, as though set forth at length herein.

116.    The conduct of Defendants constitutes "libel" that tends to "defame", "disparage", and "injure" Plaintiff in his business and reputation and has also caused "pain and suffering".

117.    Such "libel" has occurred on a continuing basis from approximately July 2009 through the present.

118.    As a result of Defendants' acts and omissions, Plaintiffs have been injured in an amount yet to be ascertained.

119.    The conduct of these Defendants as alleged herein was "willful", "fraudulent", "malicious", and "oppressive". As a result, Plaintiffs request an award of "punitive damages".

## SIXTH CLAIM FOR RELIEF
### [As to Deutsche Bank and All Persons Claiming by,
### Through, or Under Such Person, All Persons Unknown, Claiming Any Legal
### Or Equitable Right, Title, Estate, Lien, or Interest in the Property
### Described in the Complaint Adverse to Plaintiffs' Title Thereto and DOES 1-150]
### [QUIET TITLE]

120.    Plaintiff re-alleges and incorporate the allegations contained in paragraphs 1 through 87, inclusive, as though set forth at length herein.

121.    Plaintiff is the owner of the 43277 Sentiero Drive Indio, California 92203, real property now held by the Plaintiffs' estate

122     The basis of Plaintiffs title is a "Deed Granting" [Grant Deed] the above-described property in fee simple to Plaintiff.

123     Plaintiff is informed and believes and on such information and belief alleges that Defendant "DBNTC" and DOES 1-150 and all persons claiming, by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the Complaint adverse to Plaintiffs' title thereto, claim an interest adverse to Plaintiff in the above-described property as adverse interest the holder of a deed of trust against the subject property.

124 The styled "DOT" was recorded on November 17, 2006 in the Official Records of the County of Riverside, as document number 2006-0853245. Some of the Defendants including "DBNTC", "MERS" and unknown defendants, specifically those additionally designated as DOES 1-150, inclusive claim interests in the property adverse to Plaintiffs as assignees and successors of Defendants

WHEREFORE, Plaintiff is seeking to quiet title as of a date to be determined;

For attorney fees and costs of suit incurred herein; and,

For such other and further relief as the court deems just and proper.

Respectfully Submitted;

12/27/2010                                        /s/ Robert L. Firth
                                                  Robert L. Firth
                                                  Attorney for Debtor

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM

1
2
3
4

**VERIFICATION**

5

I verify that the foregoing Adversary Complaint has been reviewed by me; and that the

6

allegations therein are true and correct to the best of my knowledge, information, and belief.

7

I declare under penalty of perjury that the foregoing is true and correct.

8

Executed:

9

December 27, 2010 in Indio, California.

10
11
12

_____

B

13

rian W. Davies

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM